UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 08-1316 (DSD/SRN)

United States of America,

       Plaintiff,

v.                                                    **ORDER**

James Warren Hoffman,
Teresa Gay Hoffman,
Accredited Financial Services, Inc.,
aka AFS Co., aka AFS, Inc.,
Encore Acquisitions, LLC, aka
Encore LLC, Bessord Partnership,
LLC, aka Bessord,
Heartland Consulting, aka
Hartland Consulting,
GRD Management, aka GRD Property
Management, Chad Wegscheider,
Patrick Dols, Minnesota One
Mortgage, Inc., Wegs Enterprise, LLC,
Wegs Properties, LLC, aka
Wegs Property Management, LLC, and
Wissota Property Management, LLC,
KMC Properties, LLC,

          Defendants.

_____

    Gregory G. Brooker, Assistant U.S. Attorney, 300 South
    Fourth Street, Suite 600, Minneapolis, MN 55415, counsel
    for plaintiff.

    John C. Brink, Esq. and Brink & Gerdts, 331 Second Avenue
    South, Suite 110, Minneapolis, MN 55401, counsel for
    defendants.

    This matter is before the court on plaintiff's motion for a preliminary injunction and for appointment of a receiver. Based upon a review of the file, record and proceedings herein, and for the following reasons, the court grants plaintiff's motion.

**BACKGROUND**

**I.  Procedural Posture**

On May 13, 2008, plaintiff United States of America filed this civil action under the antifraud injunction statute, 18 U.S.C. § 1345[1], against defendants James Warren Hoffman; Teresa Gay

---

[1] 18 U.S.C. § 1345 provides:
(a)(1) If a person is--
    (A) violating or about to violate this chapter or section 287, 371 (insofar as such violation involves a conspiracy to defraud the United States or any agency thereof), or 1001 of this title;
    (B) committing or about to commit a banking law violation (as defined in section 3322(d) of this title); or
    (C) committing or about to commit a Federal health care offense;
the Attorney General may commence a civil action in any Federal court to enjoin such violation.
(2) If a person is alienating or disposing of property, or intends to alienate or dispose of property, obtained as a result of a banking law violation (as defined in section 3322(d) of this title) or a Federal health care offense or property which is traceable to such violation, the Attorney General may commence a civil action in any Federal court-
    (A) to enjoin such alienation or disposition of property; or
    (B) for a restraining order to-
        (i) prohibit any person from withdrawing, transferring, removing, dissipating, or disposing of any such property or property of equivalent value; and
        (ii) appoint a temporary receiver to administer such restraining order.
(3) A permanent or temporary injunction or restraining order shall be granted without bond.
(b) The court shall proceed as soon as practicable to the hearing and determination of such an action, and may, at any time before final determination, enter such a restraining order or prohibition, or take such other action, as is warranted to prevent
(continued...)

2

Hoffman; Accredited Financial Services, Inc.; Encore Acquisitions, LLC; Bessord Partnership, LLC; Heartland Consulting; GRD Management; Chad Wegscheider; Patrick Dols; Minnesota One Mortgage, Inc.; Wegs Enterprise, LLC; Wegs Properties, LLC; Wissota Property Management, LLC; and KMC Properties, LLC.   The United States alleged that defendants were committing large-scale mail, wire and bank fraud through a property purchasing and selling scheme and moved for an ex parte temporary restraining order ("TRO").   The court granted the TRO on May 13 and scheduled a hearing for a preliminary injunction on May 23, 2008.   After extending the TRO until June 13, 2008, the court heard argument on the United States' motion for preliminary injunction and appointment of a receiver on June 2, 2008.

## II. Findings of Fact

The findings of fact here or in the subsequent legal analysis as well as any conclusions of law forming part of the court's determination of the propriety of a preliminary injunction in this case are subject to the general rule that "'the findings of fact

---

[1](...continued)
a continuing and substantial injury to the United States or to any person or class of persons for whose protection the action is brought. A proceeding under this section is governed by the Federal Rules of Civil Procedure, except that, if an indictment has been returned against the respondent, discovery is governed by the Federal Rules of Criminal Procedure.

and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits.'" <u>Henderson v. Bodine Aluminum, Inc.</u>, 70 F.3d 958, 962 (8th Cir. 1995) (quoting <u>Univ. of Tex. v. Camenisch</u>, 451 U.S. 390, 395 (1981)).

The United States presented evidence detailing defendants' fraudulent schemes related to the purchase and sale of real property, and the court accepts the following as its findings of fact:

- Beginning in June 2006, James and Teresa Hoffman created entities to purchase apartment buildings, convert them into condominiums and sell the individual condominiums for sizable profit.

- To finance the venture, the Hoffmans – along with Chad Wegscheider and Patrick Dols – fraudulently obtained mortgages from financial institutions and mortgage lenders in the names of third parties.  The Hoffmans directed the third party buyers to cooperating mortgage brokers to apply for mortgages. Often, the buyers met with Wegscheider and Dols, each of whom facilitated the processing of the buyers' loan applications.

- The loan applications in question contained multiple material false statements, including inflation of the buyers' income and bank account balances, failure to list other properties being purchased at or near the time of the current property, failure to disclose other mortgages or liabilities and false

characterization of the source of down payment provided at closing.  The Hoffmans, for example, occasionally gave buyers the money for their down payment while the loan application failed to reflect such outside involvement.

• The Hoffmans used this method on at least three occasions, representing more than fifty condominium units, from January to August 2007.  They also employed this method to structure the purchase of a single-family residence in Willmar, MN, and to protect their own home from foreclosure in August 2006 – fraudulently obtaining $219,000 in the process.

• Generally, the Hoffmans inherited or placed renters in the condominium units, received their rental payments and then paid the rent to third-party buyers to be applied as mortgage payments.  The Hoffmans and others have routinely diverted portions of such rental payments, often causing the third-party buyers to become delinquent on the mortgage payments.

• The United States believe that the amount traceable to defendants' fraudulent activities is approximately $5.5 million.

Based upon these facts, the United States argues that the court should order a preliminary injunction to prevent the immediate and irreparable harm resulting from defendants' ongoing

mail, wire and bank fraud.    The United States also seeks
appointment of a receiver to take control of defendants' businesses
and protect innocent third parties.


## DISCUSSION

## I.   Preliminary Injunction

The court examines four factors when considering whether to
grant preliminary injunctive relief.   See Dataphase Sys., Inc. v.
C L Sys., Inc., 640 F.2d 109, 112-14 (8th Cir. 1981); Northland
Ins. Cos. v. Blaylock, 115 F. Supp. 2d 1108, 1116 (D. Minn. 2000).
Those factors are (1) the threat of irreparable harm to the movant
in the absence of relief, (2) the balance between that harm and the
harm that the relief would cause to the other litigants, (3) the
likelihood of the movant's ultimate success on the merits and
(4) the public interest.   See Dataphase, 640 F.2d at 112-14.   The
movant bears the burden of proof concerning each factor.   See Gelco
v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987).   No single
factor is determinative.   See Dataphase, 640 F.2d at 113.   Instead,
the court considers the particular circumstances of each case,
remembering that the primary question is whether the "balance of
equities so favors the movant that justice requires the court to
intervene to preserve the status quo until the merits are
determined."   Id.   If the threat of irreparable harm to the movant
is slight when compared to likely injury to the other party, the

6

movant carries a particularly heavy burden of showing a likelihood of success on the merits. See ASICS Corp. v. Target Corp., 282 F. Supp. 2d 1020, 1025 (D. Minn. 2003).

### A.   Threat of Irreparable Harm

Plaintiffs must first establish that irreparable harm will result without injunctive relief and that such harm will not be compensable by money damages. See Blaylock, 115 F. Supp. 2d at 1116. Possible or speculative harm is not enough. See Graham Webb Int'l v. Helene Curtis, Inc., 17 F. Supp. 2d 919, 924 (D. Minn. 1998). Rather, the party seeking the injunctive relief must show a significant risk of harm exists. Johnson v. Bd. of Police Comm'rs, 351 F. Supp. 2d 929, 945 (E.D. Mo. 2004). The absence of such a showing alone is sufficient to deny a preliminary injunction. See Gelco, 811 F.2d at 420. When the United States seeks an injunction pursuant to § 1345, the threat of substantial injury to a class of persons for whose protection the government initiates the action may substitute for the irreparable harm injury. See United States v. Barnes, 912 F. Supp. 1187, 1197 (N.D. Iowa 1996).

The court finds that the threat of substantial injury weighs in favor of granting a preliminary injunction. The evidence here demonstrates that defendants have used the fraudulent scheme to purchase property in at least four Minnesota cities and jeopardize the financial stability of renters, purchasers, sellers, escrow

agents and banking institutions.  Defendants' actions have already led to straw buyers defaulting on mortgages, and the scheme also threatens renter stability.  In this time of stress in the housing and mortgage markets, the impact of defendants' fraud on innocent third parties is especially great.  For these reasons, the United States has demonstrated the probability of substantial injury, and this factor weighs in favor of injunctive relief.

### B.   Balance of Harms

Under the second factor, the court considers whether the irreparable harm to the movant outweighs any potential harm to the nonmovants should the injunction issue.  See Dataphase, 640 F.2d at 114.  In § 1345 terms, this factor is comparable to the ongoing fraudulent scheme requirement.  See Barnes, 912 F. Supp. at 1197 (relating the balance of harms factor to the possible continuing threat of defendant's actions).

Defendants argue that there is no ongoing scheme because the instances of alleged mail or wire fraud occurred in months past and further maintain that a preliminary injunction would greatly harm their businesses.  The evidence demonstrates, however, that the overall scheme of wire, mail and bank fraud was continuing until the issuance of the TRO.  Specifically, defendants only recently cancelled real estate transactions in Alexandria and Winona, Minnesota, and were working on a deal in Chippewa Falls, Wisconsin, at the time the TRO issued.  Moreover, because renters occupy many

of defendants' properties and vacancies exist at such locations, there is potential for continuing and future harm to these innocent third parties that outweighs the harm to defendants.  Accordingly, this factor also supports the issuance of an injunction.

### C.   Likelihood of Success on the Merits

The third factor questions whether the movant will likely prevail on the merits.  While not overriding the other factors, the likelihood of success on the merits is preeminent.  See Halikas v. Univ. of Minn., 856 F. Supp. 1331, 1335 (D. Minn. 1994).  The United States may demonstrate a likelihood of success on the merits under § 1345 by proving a violation of the predicate offense statue by a preponderance of the evidence.  See Barnes, 912 F. Supp. at 1197; United States v. Brown, 988 F.2d 658, 663 (6th Cir. 1993).  As detailed above in the factual findings, the United States has offered evidence to demonstrate that defendants have devised a fraudulent scheme for purchasing and selling property, in violation of 18 U.S.C. §§ 1341, 1343 and 1344.  Accordingly, the United States has demonstrated a reasonable likelihood of success on the merits, and this factor supports the issuance of injunctive relief.

### D.   Public Interest

Finally, the court considers the public interest.  Here, there is a substantial public interest in protecting innocent parties from predatory and fraudulent schemes.  Further, the public

interest is served by a prompt and appropriate response to such actions. Therefore, this factor also weighs in favor of a preliminary injunction.

After a careful review of the file, record and issues raised at oral argument, as well as the <u>Dataphase</u> factors and § 1345, the court determines that issuance of a preliminary injunction is appropriate in this case.

## II.  Appointment of a Receiver

The United States argues that the appointment of a receiver is appropriate in this case to protect innocent third parties associated with defendants. Defendants argue that James Hoffman's assistant, Katherine Marie Caswell, can manage the business of the properties without the intervention of a receiver.

A receiver is "an extraordinary equitable remedy that is only justified in extreme situations." <u>Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.</u>, 999 F.2d 314, 316 (8th Cir. 1993). There is no precise formula for determining when appointment of a receiver is appropriate, but courts generally consider the following factors:

> (1) a valid claim by the party seeking the appointment, (2) the probability that fraudulent conduct has occurred or will occur to frustrate that claim, (3)imminent danger that property will be concealed, lost, or diminished in value, (4) inadequacy of legal remedies, (5) lack of a less drastic equitable remedy, and (6) likelihood that appointing the receiver will do more good than harm.

<u>Id.</u> at 316-17.

Here, many of these factors overlap with the preliminary injunction inquiry, and although appointment of a receiver is an extraordinary remedy, the court determines that it is appropriate at this time. Due to the complex financial structure of defendants' holdings, involvement of third-party renters and straw buyers and the possibility of legitimate business coexisting with fraudulent schemes, the court finds that a neutral party is best equipped to organize and administer the various holdings at issue in this action. Further, because the fraud alleged involves rent skimming and potential foreclosures, there is a danger of continuing harm to property interests that necessitates intervention. For these reasons, the court grants the United States' motion to appoint a receiver.

## CONCLUSION

Therefore, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' motion for a preliminary injunction and appointment of a receiver [Doc. No. 10] is granted.

2. All defendants; their agents; their officers; their employees; and all persons in active concert or participating with defendants in their affairs are hereby enjoined from continuing to perpetrate a fraudulent scheme involving real estate by violating the mail fraud statute, 18 U.S.C. § 1341; the wire fraud statute, 18 U.S.C. § 1343; and the bank fraud statute, 18 U.S.C. § 1344.

3.   All defendants; their agents, including financial and banking institutions and other entities having possession or control of defendants' assets; their officers; their employees; and all persons in active concert or participating with defendants in their affairs are hereby restrained and enjoined:

    a.   from withdrawing or transferring up to and including $5.5 million that is on deposit with or held on defendants' behalf by any financial or banking institution, trust fund, brokerage agency, or other financial agency, public or private, unless specifically authorized by order of the court;

    b.   from transferring, selling, assigning, dissipating, concealing, encumbering, impairing, or otherwise disposing of, in any manner, assets in real or personal property, owned, gained, or acquired by defendants up to and including $5.5 million, unless specifically authorized by order of the court; and

    c.   from opening or causing to be opened any safe deposit boxes or storage facilities titled in the name of defendants, or subject to access by defendants or under their control, without providing the United States prior notice and an opportunity to inspect the contents in order to determine that they contain no assets covered by

this preliminary injunction, unless specifically authorized by order of the court.

4. All assets, including bank accounts, of defendants Accredited Financial Services, Inc., aka AFS Co., aka AFS, Inc.; Encore Acquisitions, LLC, aka Encore LLC; Bessord Partnership, LLC, aka Bessford; Heartland Consulting, aka Hartland Consulting; GRD Management, aka GRD Property Management; Minnesota One Mortgage, Inc.; Wegs Enterprise LLC; Wegs Properties, LLC, aka Wegs Property Management, LLC; Wissota Property Management, LLC; and/or KMC Properties, LLC are deemed to be property of the Receivership and subject to the administration by the Receiver, as detailed in this Preliminary Injunction and Order.

5. The receiver shall also temporarily assume control over all bank and other accounts to which defendant Chad Wegscheider is a signatory. The receiver shall determine the status of these accounts and if any legitimate obligations exist regarding these accounts.

6. Any financial or brokerage institution, bank, business entity, or person having possession, custody, or control of any account, safe deposit box, or other asset of any of the defendants shall:

13

a.   Hold and retain within its control and prohibit the transfer, encumbrance, pledge, assignment, removal, withdrawal, dissipation, sale, or other disposal of any such account or other asset, except:

i.   for transfers or withdrawals directed by the receiver for those assets over which the receiver has control pursuant to this order or any order of the court; or

ii.  by further order of the court;

b.   Deny access to any safe deposit box titled in the name of Defendants or otherwise subject to access by defendants;

c.   Provide to the receiver, with ten (10) business days of notice of this preliminary injunction and order, a statement setting forth:

i.   The identification of each account or asset titled in the name of any and all named defendants;

ii.  The balance of each account or a description of the nature and value of each asset under the name of any and all named defendants; and

iii. The identification of any safe deposit box or storage facility that is either titled

14

in the name of or subject to access by each
named defendant.

d.   Allow the receiver immediate access to inspect or
copy any records or other documentation pertaining to
such account or asset owned or controlled by each named
defendant, including, but not limited to, originals or
copies of account applications, account statements,
signature cards, checks, drafts, deposit tickets,
transfers to and from the accounts, all other debit and
credit instruments or slips, currency transaction
reports, 1099 forms, and safe deposit box logs. Any such
financial institution, account custodian, or other
aforementioned entity may arrange for the receiver to
obtain copies of any such records which the receiver
seeks, provided that such institution or custodian may
charge a reasonable fee not to exceed twenty five (25)
cents per page copied;

e.   At the direction of the receiver, and without
further order of the court, convert any stocks, bonds,
options, mutual funds, or other securities owned by each
named defendant; and

f.   cooperate with all reasonable requests of the
receiver relating to implementation of this preliminary
injunction and order, including transferring funds at the

15

receiver's direction and producing records related to all accounts owned by each named defendant.

7. Defendants; their agents, including financial and banking institutions and other entities having possession or control of defendants' assets; their officers; their employees; and all persons in active concert or participating with defendants in their affairs are hereby restrained and enjoined from:

a. failing to maintain all business, corporate, foundation, banking, financial, and/or accounting records in their possession that could be material to this cause of action;

b. altering any business, corporate, foundation, banking, financial, and/or accounting records in their possession that could be material to this cause of action;

c. disposing of any business, corporate, foundation, banking, financial, and/or accounting records in their possession that could be material to this cause of action.

8. Andy Luger, of Greene Espel LLP, is appointed receiver for defendants Accredited Financial Services, Inc., aka AFS Co., aka AFS, Inc.; Encore Acquisitions, LLC, aka Encore LLC; Bessord Partnership, LLC, aka Bessford; Heartland Consulting, aka Hartland Consulting; GRD Management, aka GRD Property Management; Minnesota

One Mortgage, Inc.; Wegs Enterprise LLC; Wegs Properties, LLC, aka Wegs Property Management, LLC; Wissota Property Management, LLC; and/or KMC Properties, LLC and any affiliates, subsidiaries, divisions, sales, entities, successors, or assigns, with the full power of an equity Receiver.  The receiver shall solely be the agent of the court in acting as receiver under this order.  The receiver shall be accountable directly to the court and shall comply with any local rules of the court governing receivers, as well as the Federal Rules of Civil Procedure.

9.   The receiver is directed and authorized to accomplish the following:

a.   Assume full control of the operations of defendants Accredited Financial Services, Inc., aka AFS Co., aka AFS, Inc.; Encore Acquisitions, LLC, aka Encore LLC; Bessord Partnership, LLC, aka Bessford; Heartland Consulting, aka Hartland Consulting; GRD Management, aka GRD Property Management; Minnesota One Mortgage, Inc.; Wegs Enterprise LLC; Wegs Properties, LLC, aka Wegs Property Management, LLC; Wissota Property Management, LLC; and/or KMC Properties, LLC removing, as the receiver deems necessary or advisable, any director, officer, independent contractor, employee, or agent of these

17

defendants from control of, management of, or participation in, the business affairs of each of these defendants;

b. Take exclusive custody, control, and possession of all the assets in the possession, custody, or under the control of defendants Accredited Financial Services, Inc., aka AFS Co., aka AFS, Inc.; Encore Acquisitions, LLC, aka Encore LLC; Bessord Partnership, LLC, aka Bessford; Heartland Consulting, aka Hartland Consulting; GRD Management, aka GRD Property Management; Minnesota One Mortgage, Inc.; Wegs Enterprise LLC; Wegs Properties, LLC, aka Wegs Property Management, LLC; Wissota Property Management, LLC; and/or KMC Properties, LLC, wherever situated, except those assets seized by the United States pursuant to valid orders of a court. The receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all assets of defendants Accredited Financial Services, Inc., aka AFS Co., aka AFS, Inc.; Encore Acquisitions, LLC, aka Encore LLC; Bessord Partnership, LLC, aka Bessford; Heartland Consulting, aka Hartland Consulting; GRD Management, aka GRD Property Management; Minnesota One Mortgage, Inc.; Wegs Enterprise LLC; Wegs Properties, LLC, aka Wegs Property Management, LLC; Wissota Property

18

Management, LLC; and/or KMC Properties, LLC, and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of these defendants; PROVIDED, HOWEVER, the receiver shall not attempt to collect any amount from a person if the receiver believes the person was a victim of the mail, wire, or bank fraud scheme alleged in the Amended Complaint in this matter;

c. Take all steps necessary to secure the business premises of defendants Accredited Financial Services, Inc., aka AFS Co., aka AFS, Inc.; Encore Acquisitions, LLC, aka Encore LLC; Bessord Partnership, LLC, aka Bessford; Heartland Consulting, aka Hartland Consulting; GRD Management, aka GRD Property Management; Minnesota One Mortgage, Inc.; Wegs Enterprise LLC; Wegs Properties, LLC, aka Wegs Property Management, LLC; Wissota Property Management, LLC; and/or KMC Properties, LLC. Such steps may include, but are not limited to, the following as the receiver deems necessary or advisable: (a) completing a written inventory of all assets; (b) obtaining pertinent information from all employees and other agents and all accrued and unpaid commissions and compensation of each such employee or agent; (c) videotaping all portions of the above-referenced business locations; (d) securing the

above-referenced business locations by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at the locations;

d.   Conserve, hold, and manage all receivership assets, and perform all acts necessary or advisable to preserve the value of those assets in order to prevent any irreparable loss, damage, or injury to consumers or creditors of defendants Accredited Financial Services, Inc., aka AFS Co., aka AFS, Inc.; Encore Acquisitions, LLC, aka Encore LLC; Bessord Partnership, LLC, aka Bessford; Heartland Consulting, aka Hartland Consulting; GRD Management, aka GRD Property Management; Minnesota One Mortgage, Inc.; Wegs Enterprise LLC; Wegs Properties, LLC, aka Wegs Property Management, LLC; Wissota Property Management, LLC; and/or KMC Properties, LLC, including but not limited to obtaining an accounting of the assets and preventing transfer, withdrawal, or misapplication of assets;

e.   Manage and administer the operations of defendants Accredited Financial Services, Inc., aka AFS Co., aka AFS, Inc.; Encore Acquisitions, LLC, aka Encore LLC; Bessord Partnership, LLC, aka Bessford; Heartland Consulting, aka Hartland Consulting; GRD Management, aka

GRD Property Management; Minnesota One Mortgage, Inc.; Wegs Enterprise LLC; Wegs Properties, LLC, aka Wegs Property Management, LLC; Wissota Property Management, LLC; and/or KMC Properties, LLC, until further order of the court, by performing all incidental acts that the receiver deems to be advisable or necessary;

f.    Choose, engage, and employ attorneys, accountants, appraisers, property managers, and other independent contractors and technical specialists, with regard to the operations of defendants Accredited Financial Services, Inc., aka AFS Co., aka AFS, Inc.; Encore Acquisitions, LLC, aka Encore LLC; Bessord Partnership, LLC, aka Bessford; Heartland Consulting, aka Hartland Consulting; GRD Management, aka GRD Property Management; Minnesota One Mortgage, Inc.; Wegs Enterprise LLC; Wegs Properties, LLC, aka Wegs Property Management, LLC; Wissota Property Management, LLC; and/or KMC Properties, LLC as the receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this preliminary injunction and order;

g.    Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of or exercising the authority granted by this preliminary injunction and

order.  The receiver shall apply to the court for prior approval of any payment of any debt or obligation incurred by defendants Accredited Financial Services, Inc., aka AFS Co., aka AFS, Inc.; Encore Acquisions, LLC, aka Encore LLC; Bessord Partnership, LLC, aka Bessford; Heartland Consulting, aka Hartland Consulting; GRD Management, aka GRD Property Management; Minnesota One Mortgage, Inc.; Wegs Enterprise LLC; Wegs Properties, LLC, aka Wegs Property Management, LLC; Wissota Property Management, LLC; and/or KMC Properties, LLC, prior to the date of entry of this Preliminary Injunction and Order, except payments that the receiver deems necessary or advisable to secure assets of each of these defendants, such as rental payments;

h.  Communicate with, and respond to communications from, all alleged victims of defendants' fraud;

i.  Maintain accurate records of all receipts and expenditures that the receiver makes as the receiver under this order; and

j.  Liquidate and close any of the operations of defendants Accredited Financial Services, Inc., aka AFS Co., aka AFS, Inc.; Encore Acquisions, LLC, aka Encore LLC; Bessord Partnership, LLC, aka Bessford; Heartland Consulting, aka Hartland Consulting; GRD Management, aka

GRD Property Management; Minnesota One Mortgage, Inc.; Wegs Enterprise LLC; Wegs Properties, LLC, aka Wegs Property Management, LLC; Wissota Property Management, LLC; and/or KMC Properties, LLC that were involved in violating 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud), or 1344(bank fraud).

10. Defendants and their officers, agents, directors, servants, employees, salespersons, independent contractors, corporations, subsidiaries, affiliates, successors, and assigns shall fully cooperate with and assist the receiver.

11. Upon service of a copy of this preliminary injunction and order, all banks, broker-dealers, savings and loans, escrow agents, title companies, commodity trading companies, or other financial institutions shall cooperate with all reasonable requests of the receiver relating to implementation of this preliminary injunction and order, including transferring funds at the receiver's direction and producing records related to the assets of defendants.

12. The receiver and all personnel hired by the receiver as herein authorized, including counsel to the receiver and accountants, are entitled to reasonable compensation for the performance of duties pursuant to this preliminary injunction and order and for the cost of actual out-of-pocket expenses incurred by them, from the assets now held by or in the possession or control of, or which may be received by, defendants. The receiver shall

file with the court and serve on defendants, periodic requests for the payment of such reasonable compensation, with the first such request filed no more than sixty (60) days after the date of this preliminary injunction and order.  The receiver shall not increase the hourly rates used as the bases for such fee applications without prior approval of the court.

13.  The receiver shall file with the Clerk of Court a bond in the sum of $1,000 with sureties to be approved by the court, conditioned that the receiver will well and truly perform the duties of the office and abide by and perform all acts the court directs.

14.  The court shall retain jurisdiction of this matter for all purposes.

15.  Civil discovery during the pendency of this preliminary injunction is stayed.

Dated:  June 12, 2008

s/David S. Doty
David S. Doty, Judge
United States District Court